UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHOHN L. TOOMBS,

  Plaintiff,             Civil Action No. 15-CV-14388

vs.                 HON. BERNARD A. FRIEDMAN

LJ ROSS ASSOCIATES, INC.,

  Defendant.
_____/

## OPINION AND ORDER DENYING THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

  This matter is presently before the Court on cross motions for summary judgment [docket entries 18 and 19]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. The hearing scheduled for July 5, 2017, is therefore canceled.

  This is a debt collection practices and credit reporting case. In February and March 2015, plaintiff was denied credit by a number of lenders due to derogatory information on his credit reports. Plaintiff complained to the credit reporting agencies ("CRAs") that defendant (acting as a debt collector on behalf of University of Michigan Health Systems ("UMHS")) had reported two debts he claimed he did not owe, whereupon these agencies reported the dispute to defendant. Plaintiff also wrote directly to defendant, stating it "has wrongfully placed a claim on my credit reports to which I have no claim to [n]or any obligation" and "demand[ing] that it be removed [i]mmediately." Pl.'s Summ. J. Br., Ex. H. When deposed, defendant's president and CEO, Rebecca Roberts, was unable to explain how defendant responded when notified that plaintiff claimed he did not owe the reported debts. Roberts 11-8-16 Dep. at 57. At a later deposition, Roberts testified that defendant responded by verifying "the information that we have in our system.

. . . Mr. Toombs said this wasn't his debt. His name and his address was there." Roberts 1-27-17 Dep. at 28. In an undated declaration, Def.'s Summ. J. Br., Ex. 1, Roberts indicates that in response to the CRA's dispute notices, defendant investigated each account and reviewed its "business records" and the information provided by the CRAs and by plaintiff. She also indicates that defendant "reported the results of its investigation" to the CRAs, although she does not state what those results were.

In April 2015, defendant sent plaintiff a letter demanding payment on one of the UMHS accounts. In a letter to defendant later the same month, plaintiff's counsel denied the debt and requested validation. Pl.'s Summ. J. Br., Ex. R. At some point thereafter, apparently in October 2015, defendant told the CRAs "to remove information about these accounts from [plaintiff's] credit report" and to remove plaintiff as a "responsible party" on these debts. Roberts 11-8-16 Dep. at 60-62.

The debts in question are owed to UMHS for medical services rendered to Caris Pearson in 2010-2012. Pl.'s Summ. J. Br., Ex. C. Caris Pearson is Nikki Pearson's son and, since 2011 when plaintiff and Nikki Pearson married, plaintiff's step-son. Pl.'s Dep. at 15, 27. As Caris Pearson was 22 years old in January 2017, *id.* at 27, one can surmise that he was 15-17 years old in 2010-2012. Before referring this matter to defendant for collection, UMHS sent bills to Nikki Pearson and its bills appear to identify her as the guarantor. *See, e.g.,* Pl.'s Summ. J. Br., Ex. C at 1, 2. Plaintiff's name appears nowhere in UMHS's paperwork.

In April 2012, defendant received a faxed letter purportedly from plaintiff, which states:

> This letter is being sent in response to the letter sent to Caris Pearson.
> I the Parent of Caris will assume the letter sent to him by this

> organization was done in error. No such debt could exist, for Caris Pearson is a <u>minor</u> and not legally capable of entering into any contracts or binding agreements what so ever. Upon receipt of this letter this organization and any representatives there of is asked to seize all communication with Caris and comply with all laws associated with the <u>fair debt collection practice act.</u>
>
> Any further communication attempts from this organization and or it representatives will be kept as proof and reported to the proper authorities to be enforced and or legal action persuaded.

Pl.'s Summ. J. Br., Ex. G. Based solely on this letter, which plaintiff denies having sent or knowing anything about, *see* Pl.'s Dep. at 76, defendant changed its records to indicate that plaintiff was a "responsible party" for these debts. Roberts 1-27-17 Dep. at 18-21, 40. Roberts also testified that in response to this letter defendant sent plaintiff a "validation notice . . . giv[ing] the opportunity for the responsible party to dispute or . . . request validation of the debt," but defendant does not have a copy of this letter. *Id.* at 38-40. She also testified that plaintiff did not respond. *Id.* at 41-42.

Plaintiff is asserting claims in this matter under the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Michigan Fair Debt Collection Practices Act ("MFDCPA"). Specifically, plaintiff claims defendant violated his rights under the FCRA, either negligently or willfully, by failing to conduct a reasonable investigation once he and the CRAs notified defendant that he disputed the UMHS debts and by failing to promptly correct or delete the accounts; and that defendant violated his rights under the FDCPA and the MFDCPA by falsely representing that he owed the debt in question, communicating false information to the CRAs, failing to provide plaintiff with required notices, and failing to properly validate the debts.

Both parties seek summary judgment on all of these claims. The legal standards governing these motions are well known:

> Under Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine dispute as to any material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Viewing the evidence in the light most favorable to the opposing party, summary judgment may be granted only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party. *See Anderson*, 477 U.S. at 248-50; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989). In other words, "[a] material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

*Skrelja v. State Auto. Mut. Ins. Co.*, No. 15-CV-12460, 2016 WL 3385093, at *2 (E.D. Mich. June 20, 2016).

Under this standard, the Court must deny both motions for summary judgment because the material facts are genuinely disputed and all such disputes must be resolved by a jury. In particular, a jury will have to determine whether it was reasonable, negligent, or reckless for defendant to assume that plaintiff was a responsible party based solely on the April 2012 fax, purportedly sent by plaintiff, in which he claimed to be Caris Pearson's "parent," although he did not claim responsibility for the debt and the information provided to defendant by UMHS never mentioned plaintiff; whether defendant conducted a "fairly searching inquiry," *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012), once plaintiff and the CRAs notified defendant that plaintiff disputed the debt; whether defendant met its notice obligations by sending plaintiff the letter referenced in Roberts' deposition but which has not been produced; whether plaintiff's inability to

4

obtain credit was caused by defendant's reporting the UMHS debts or by other items on plaintiff's credit report for which defendant is not responsible; and the value, if any, of plaintiff's credit denials and other non-economic damages.

In short, this is not a case that can be resolved in favor of either party on summary judgment. Accordingly,

IT IS ORDERED that both parties' motions for summary judgment are denied.

S/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: June 19, 2017
    Detroit, Michigan